IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-01089-REB-BNB

WILLIE HORTON,

Plaintiff,

v.

BLAKE DAVIS, ADX Warden,
MARK COLLINS, ADX Admin. Remedy Coordinator,
P. RANGEL, ADX Unit Manager,
D. FOSTER, ADX Counselor, and
A. FENLON, ADX Case Manager,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the defendants' **Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)** [Doc. #27, filed 11/18/2013] (the "Motion). I respectfully RECOMMEND that the Motion be GRANTED.

## I.  STANDARD OF REVIEW

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416

U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.  BACKGROUND

The plaintiff is incarcerated by the Federal Bureau of Prisons ("BOP") at the United States Penitentiary, Administrative Maximum, in Florence, Colorado ("ADX").  He filed his Amended Prisoner Complaint on August 28, 2013 [Doc. #15] (the "Complaint").  The Complaint contains the following allegations:[1]

1.  On December 31, 2010, the plaintiff received an incident report and was informed that the incident was under FBI investigation.  *Complaint*, p. 4, ¶ 1.  The FBI investigation was allegedly completed on April 28, 2011.  No charges were filed.  Id. at ¶ 2.

2.  The Unit Disciplinary Committee ("UDC") hearing was held on May 9, 2011.  At the hearing, the plaintiff requested the dates the FBI investigation began and ended to use for his defense.  His request was refused by UDC officers.  Id. at ¶ 3.

3.  The plaintiff told defendants Rangel and Foster that the hearing was being conducted in violation of his due process rights.  Rangel stated that they would have defendant Warden Davis sign a "delay form."  The plaintiff stated "that would be falsification of a Government document because there would be no need to sign a delay form for a hearing that was already conducted untimely other then to conceal a violation of plaintiff due process rights."[2]  Id. at ¶ 4.

---

[1] The plaintiff makes additional factual allegations in his response to the defendants' Motion.  *Plaintiff's Memorandum in Response to Defendants Motion to Dismiss Pursuant to Fed.R.Civ.P,. 12(b)(6)*  [Doc. #30].  The plaintiff may not amend his Complaint in this manner.  Instead, he must seek leave of the court to amend the Complaint, and the motion to amend must detail the proposed amendments and the reasons why such amendments are necessary.  In addition, the plaintiff must attach the proposed amended complaint to the motion.

[2] I have quoted the plaintiff's filings as written, without correction or acknowledgment of error.

4. The plaintiff submitted an informal complaint on the due process violation. He also submitted a grievance to Warden Davis and an appeal to the regional level. Both were rejected. He appealed those decisions, but did not receive a response. Id. at p. 5, ¶ 5.

5. The "DHO" hearing was held on June 6, 2011. The plaintiff was found guilty. The DHO findings were not provided to the plaintiff "within 15 days as required to prevent plaintiff from filing an appeal." Id. at ¶ 6. The plaintiff received the DHO findings after he completed the six month sanction that was imposed on him. Id. at ¶ 7. The plaintiff filed a grievance. The regional response stated that the plaintiff's due process rights were violated and that a rehearing was necessary. The DHO refused to schedule a rehearing. On February 21, 2012, the Regional Office sent a memorandum to Warden Davis stating that the plaintiff must be given another DHO hearing because the UDC and DHO conduct violated the plaintiff's due process rights. The rehearing was not conducted. Id. at ¶ 8.

6. The plaintiff was released from the Administrative Segregation Unit to the F-Unit on August 2, 2011. Id. at ¶ 9. Defendant Rangel had the plaintiff moved from the F-Unit to the E-Unit for filing the grievances. Id. at ¶ 10.

7. The defendants then began to prevent the plaintiff from submitting documents to the court. On October 12, 2011, the plaintiff gave defendant Foster a handwritten legal brief to be copied so it could be submitted to the court. Foster went on leave without copying the documents. Id. at ¶ 11. The plaintiff rewrote the brief and gave it to defendant Fenlon to copy. Fenlon refused and stated that he did not copy handwritten legal documents. The plaintiff filed a grievance on Fenlon for obstructing his access to the court "due to the fact every legal document have to be handwritten by inmates due to the fact inmates are not allowed the use of a

typwritter." Id. at ¶ 12.

8. On November 2, 2011, Foster returned from leave and gave the plaintiff back his brief "uncopied after stating he would copy it." This was in retaliation for filing a grievance on Fenlon. The plaintiff then filed a grievance against Foster. Id. at p. 6, ¶ 13.

9. The plaintiff asked defendants Davis and Collins why he was being refused copies of legal documents that he was willing to pay for. They responded "via Administrative Remedy" that handwritten legal documents will not be copied. Id. at ¶ 14.

10. The plaintiff told the defendants that they were impeding his access to the court, and he showed them "the court orders/rejection." They still refused to assist the plaintiff in filing papers with the court. Id. at ¶ 15.

11. The plaintiff filed Civil Action No. 12-cv-349-REB-BNB. The defendants "continued to retaliate and prevent the plaintiff from presenting his legal claims to the court." Id. at ¶ 17. "The defendants knew their actions was denying plaintiff access to the court due to the fact plaintiff showed the defendants the courts rejections of the Complaint and due to the fact plaintiff attached the same court rejection to an amendment to Civil Action No. 12-cv-349-REB-BNB as evidence which demonstrated a genuine inequity." Id. at ¶ 18.

12. "The defendants only concern was having plaintiffs complaint dismissed for failure to exhaust administrative remedies not to seek justice even though they knew the conduct was denying plaintiff access to the court. Now plaintiff is unable to present his claim in the District of Columbia or Virginia Court." Id. at ¶ 19.

The plaintiff asserts three claims. Claim One alleges violation of the plaintiff's due process rights during the UDC and DHO processes. Id. at p. 7. Claim Two alleges retaliation

for filing grievances. Id. at p. 8. Claim Three alleges that the plaintiff was denied access to the court. Id. at p. 9. The plaintiff seeks a declaratory judgment that "the defendants' acts, policies, and practices described herein violate plaintiff's rights under the U.S. Constitution." He also seeks injunctive relief in the form of a typewriter for inmates' use and compensatory and punitive damages.[3] Id. at p. 11.

### III.  ANALYSIS

#### A.  Availability of a Bivens Remedy

The plaintiff brings this action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). The defendants argue that the court should not create a Bivens remedy for the plaintiff's claims. *Motion*, pp. 3-6.

In Bivens, the Supreme Court permitted an action for damages for a violation of the Fourth Amendment. Since then, the Court has recognized a Bivens remedy for violations of the Eighth Amendment's Cruel and Unusual Punishment Clause, Carlson v. Green, 446 U.S. 14 (1980), and violations of the Fifth Amendment's Equal Protection Clause. Davis v. Passman, 442 U.S. 228 (1979). Correctional Services Corp. v. Malesko, 534 U.S. 61, 67 (2001). "Since Carlson [the Court has] consistently refused to extend Bivens liability to any new context or new category of defendants." Id. at 68. In addition, the Court has expressed reluctance to extend Bivens to claims for monetary damages based on an alleged First Amendment violation. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (noting that the Court has "declined to extend

---

[3]Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

Bivens to a claim sounding in the First Amendment"); Bush v. Lucas, 462 U.S. 367, 390 (1983) (refusing to recognize a right to seek damages for alleged First Amendment violation under Bivens).

The Court has stated that a Bivens remedy "is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances we have found a Bivens remedy unjustified." Robbins v. Wilkie, 551 U.S. 537, 550 (2007). A Bivens remedy should not be created where there exists any alternative existing process for protecting the constitutional interest. Id. "But even in the absence of an alternative, a Bivens remedy is a subject of judgment: the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation." Id. (internal quotations and citation omitted).

Here, the plaintiff has other means to protect his constitutional rights. A federal prisoner may seek injunctive relief against BOP officials and submit grievances through the BOP's administrative remedy program, Malesko, 534 U.S. at 7, or pursue a remedy under the mandamus statute, 28 U.S.C. 1361. Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1233-34 (10th Cir. 2005). Based on the Supreme Court's reluctance to recognize new Bivens remedies and the availability of alternative means to seek relief for his alleged constitutional violations, I recommend that the court decline to create a Bivens remedy for the plaintiff's claims.

The unavailability of a Bivens remedy notwithstanding, the plaintiff may seek declaratory and injunctive relief based on the alleged violations of the First Amendment and

procedural due process.[4]  See Malesko, 534 U.S. at 74; Simmat, 413 F.3d at 1231-33; Williams v. Klien, Civil Action No. 12-cv-01580-REB-BNB, --- F.Supp.2d ---, 2014 WL 716982 at *3 (D.Colo. February 24, 2014).

### B.  Claim One: Due Process

In Claim One, the plaintiff alleges that his due process rights were violated "at the UDC and DHO process." *Complaint*, p. 7. The defendants argue that the plaintiff has failed to state a claim upon which relief can be granted. *Motion*, pp. 11-12.

The plaintiff's due process rights are triggered only if he has been deprived of a protected liberty or property interest. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989). The plaintiff alleges that he "completed the 6-months DHO sanctions" but he does not describe the sanctions. He also alleges that he "was released from the Administrative Segregation Unit to the F-Unit on August 2, 2011," but he does not allege whether he was placed in segregation as a result of the DHO hearing, nor does he describe the conditions of confinement in Administrative Segregation. See Sandin v. Conner, 515 U.S. 472, 483 (1995) (holding that a deprivation occasioned by prison condition does not reach protected liberty interest status unless it imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life).

The plaintiff does not allege any facts from which to infer a protected liberty interest. Therefore, Claim One fails to state a claim upon which relief can be granted.

---

[4]The defendants assert that the court should deny the plaintiff's request for declaratory judgment because "the declaration that Plaintiff seeks is duplicative of a favorable finding on his due process, retaliation, and access to courts claims." *Motion*, p. 19. However, because the plaintiff may not assert his due process, retaliation, and access to courts claims under Bivens, his request for declaratory relief is not duplicative.

### C. Claim Two: Retaliation

In Claim Two, the plaintiff alleges that the defendants retaliated against him for filing grievances. He refers to paragraphs one through nineteen of the Complaint for the factual basis of Claim Two. *Complaint*, p. 8.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotations and citation omitted). The First Amendment protects the right to free speech and the right to petition the government for redress of grievances. U.S. Const. Amend. I. The filing of an administrative grievance is protected by the First Amendment. Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991). "This principle applies even if the action taken in retaliation would be otherwise permissible." Id. at 948.

"Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." Poole v. County of Otero, 271 F.3d 955, 960 (10th Cir. 2001) *abrogated on other grounds by* Hartman v. Moore, 547 U.S. 250 (2006). An inmate, however, is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity." Peterson, 149 F.3d at 1144. Therefore, to prevail on a claim of retaliation a plaintiff "must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." Id. (quotations and citation omitted). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." Id. (quotations and citation omitted) (emphasis in original).

The defendants assert that the plaintiff fails to state a claim for retaliation because his allegations are conclusory and unsupported by facts. *Motion*, pp. 14-15. The plaintiff alleges that the UDC hearing was held on May 9, 2011; the hearing was untimely; he told defendants Rangel and Foster that the hearing violated his due process rights; he filed an informal complaint on the due process violation, then filed a grievance to Warden Davis and an appeal to the Regional Director; he filed a grievance on January 3, 2012; the response to that grievance stated that his due process rights had been violated and ordered a new hearing; the DHO refused to hold a new hearing; the Regional Office sent a memorandum to Warden Davis on February 21, 2012, stating that the plaintiff must be given another DHO hearing; the hearing was not conducted; and after the plaintiff was released from Administrative Segregation on August 2, 2011, defendant Rangel moved him from F-Unit to E-Unit for filing the grievances.

The plaintiff's allegations against defendant Rangel are too tenuous to state a claim for retaliation. Indeed, the Complaint does not contain any specific facts from which to infer that defendant Rangel had knowledge of the plaintiff's due process grievances. The plaintiff alleges only that he told her on or around May 9, 2011, that the hearing violated his due process rights, and she transferred him from F-Unit to E-Unit on August 2, 2011. Moreover, there are no allegations regarding the conditions of the E-Unit or why transfer to the E-Unit would "chill" him from further exercising his right to file grievances. To the contrary, the plaintiff alleges that he filed several grievances after his transfer.

The plaintiff's allegations against Foster and Fenlon are also insufficient. The plaintiff alleges that after his transfer, "the defendants begin to prevent plaintiff from submitting documents to the court." As with defendant Rangel, he does not allege any specific facts to

9

show that Foster or Fenlon had any knowledge of his due process grievances. To the extent he is attempting to hold them liable for retaliating against him for filing the due process grievances, he fails to state a claim for relief.

The plaintiff further alleges that on October 12, 2011, Foster went on leave without copying the plaintiff's legal brief; Fenlon refused to copy it because it was handwritten; the plaintiff filed a grievance on Fenlon; and Foster returned from leave on November 2, 2011, and returned the brief without copying it because the plaintiff had filed a grievance against Fenlon. Again, there are no allegations from which to infer that Foster knew of the plaintiff's grievance against Fenlon.

The plaintiff's remaining allegation regarding retaliation is that "[p]laintiff even filed a Civil Action Case No. 12-cv-349-REB-BNB but the defendants continued to retaliate and prevent the plaintiff from presenting his legal claims to the court." This vague and conclusory statement is not sufficient to state a plausible claim for retaliation against any of the defendants.

The Motion should be granted insofar as it seeks dismissal of Claim Two.

### D.  Claim Three: Denial of Access to the Courts

In Claim Three, the plaintiff alleges that the defendants denied him access to the court as described in paragraphs eleven through nineteen of the complaint. He also incorporates by reference "the exhibits attached to the Amendment to Civil Action No. 12-cv-00349 which supports the aforemention claim." *Complaint*, p. 9.

Paragraphs eleven through nineteen include the allegations against Fenlon and Foster regarding their failure to copy his handwritten legal brief; conclusory allegations that the "defendants" prevented the plaintiff from presenting legal claims to the court in Civil Action No.

12-cv-00349; and a conclusory allegation that the plaintiff is "unable to present his claim in the District of Columbia or Virginia Court." The "Amendment" in Civil Action No. 12-cv-00349 contains two copies of "Rejection Sheets" from the Director's Office of the Civil Division of the "DC Superior Court." The first Rejection Sheet is dated September 7, 2011, and the second Rejection Sheet is dated October 5, 2011. Both Rejection Sheets state that the plaintiff's Complaint is being rejected because the plaintiff did not submit an application to proceed *in forma pauperis* and "[l]ined paper was used which is not acceptable."

The defendants assert that the plaintiff has failed to state a claim for violation of the First Amendment right of access to the courts. *Motion*, pp. 15-16. The right of access to the courts is a fundamental constitutional right. Bounds v. Smith, 430 U.S. 817, 828 (1977). However, an inmate alleging denial of access to the courts must allege an actual injury. Lewis v. Casey, 518 U.S. 343, 349 (1996). To establish actual injury, the inmate must show that "the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim." Id. at 356. Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (citing Lewis, 518 U.S. at 351); Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010) ("a prisoner must demonstrate actual injury from interference with his access to the courts--that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement").

The Complaint does not contain any factual allegations to show that the plaintiff was denied legal resources that hindered his efforts to pursue a nonfrivolous legal claim. To the contrary, Civil Action No. 12-cv-00349 was dismissed on summary judgment after full briefing (including a response by the plaintiff) based on the plaintiff's failure to exhaust his

administrative remedies. The Complaint in Civil Action No. 12-cv-00349 contains allegations that the legal brief submitted to Fenlon and Foster was to be filed in the Superior Court of the District of Columbia, but there are no factual allegations (in that case or here) to show that the plaintiff was pursuing nonfrivolous claims in the Superior Court. Accordingly, the Motion should be granted insofar as it seeks dismissal of the plaintiff's claim for denial of his First Amendment right to access the courts.

## IV. CONCLUSION

I respectfully RECOMMEND that the defendants' Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. #27] be GRANTED and that the Complaint be DISMISSED in its entirety.[5]

Dated April 21, 2014.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge

---

[5] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).