IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01089-REB-NYW

WILLIE HORTON,

    Plaintiff,
v.

BLAKE DAVIS, ADX Warden,
MARK COLLINS, ADX Admin. Remedy Coordinator,
P. RANGEL, ADX Unit Manager,
D. FOSTER, ADX Counselor,
A. FENLON, ADX Case Manager,

    Defendants.

---

RECOMMENDATION REGARDING PLAINTIFF'S MOTION TO AMEND

---

Magistrate Judge Nina Y. Wang

This matter comes before the court on Plaintiff's Memorandum in Support of Motion for Leave to File Amended Pleading to Plaintiffs [sic] First Amended Complaint ("Motion for Leave to File a Second Amended Complaint") [#39], filed *pro se* on May 8, 2014 by Plaintiff Willie Horton ("Plaintiff" or "Mr. Horton") against Blake Davis, in his official capacity as Warden of the "United States Penitentiary in Florence, Colorado ("ADX Colorado"); Mark Collins, in his official capacity as Administrative Remedy Coordinator at ADX Colorado; P. Rangel, in her official capacity as ADX Unit Manager; D. Foster, in his official capacity as an ADX Counselor; and A Fenlon, in his official capacity as ADX Case Manager (collectively, "Defendants"). After dismissal of his original and First Amended Complaints, Mr. Horton now seeks leave to file a Second Amended Complaint. The Motion for Leave to File Second Amended Complaint was referred to this Magistrate Judge pursuant to the Order of Reference dated September 17, 2013 [#18] and memorandum dated June 4, 2014 [#41]. After carefully considering the Motion and related briefing, the entire case file, and applicable case law, I

1

respectfully RECOMMEND that Plaintiff's Motion to Amend be DENIED for the following reasons.

## BACKGROUND AND PROCEDURAL HISTORY

Mr. Horton, a prisoner incarcerated at the United States Penitentiary, High Security, in Florence, Colorado ("ADX Florence"), filed this lawsuit pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403, U.S. 388 (1971) claiming violations of his Fifth Amendment right to due process and First Amendment right to access the courts and against retaliatory conduct arising from Defendants' alleged conduct associated with the filing of a previous lawsuit. He seeks injunctive, monetary, and declaratory relief.[1]

***Original Complaint.*** Mr. Horton filed the original Complaint in this action on April 22, 2013, seeking to incorporate by reference pleadings from an earlier lawsuit that was dismissed without prejudice. [#1]. Magistrate Judge Boland determined that Plaintiff's Complaint was defective pursuant to D.C.COLO.LCivR 8.2 and ordered him to cure the deficiencies if he wished to pursue his claims. [#4]. On May 28, 2013, Mr. Horton filed a Prisoner's Complaint on a court-approved form identifying three claims and stating under each that he "would like to incorporate and adopt by reference paragraphs 1 thru 25, the cause of action section of Complaint No. 12-cv-00349-REB-BNB ("12-349 Action") and the amendment to that complaint." [#11 at 8]. On August 14, 2013, Judge Boland ordered him to file an Amended Complaint "that states specifically the claims he is challenging in this action," after noting that the Complaint in the 12-349 Action contained only thirteen paragraphs. [#14].

***First Amended Complaint.*** Mr. Horton then filed an Amended Complaint ("First

---

[1] Specifically, Mr. Horton requests that the court order Defendants to provide a typewriter for inmates' use, compensatory damages in an unspecified amount, punitive and exemplary damages in an unspecified amount, and declaratory judgment that Defendants' "acts, policies, and practices" violate his constitutional rights.

Amended Complaint") on August 28, 2013. [#15]. Though this court has previously described Mr. Horton's contentions in detail, they are once again recounted here for the sake of completeness. Mr. Horton alleges that he received an incident report and was informed that the incident was under FBI investigation on December 30, 2010. [#15 at 4]. The FBI allegedly concluded its investigation on April 28, 2011, but filed no charges. [*Id.*] A Unit Disciplinary Committee ("UDC") convened on May 9, 2011, at which Plaintiff requested the dates the FBI investigation began and ended for use in his defense. The UDC officers refused this request. [*Id.*] Plaintiff protested to Defendant Rangel and Defendant Foster that the hearing was being conducted in violation of his due process rights. Ms. Rangel responded that they would have Defendant Warden Davis sign a "delay form." [*Id.*] Plaintiff replied that doing so "would be falsification of a Government document because there would be no need to sign a delay form for a hearing that was already conducted untimely other then to conceal a violation of plaintiff due process rights."[2] [*Id.*] Plaintiff subsequently submitted an informal complaint regarding the due process violation. He also submitted a grievance to Defendant Davis and an appeal on the regional level. Both were rejected. Plaintiff appealed those decisions but did not receive response. [*Id.* at 5].

A Discipline Hearing Officer ("DHO") conducted a hearing on June 6, 2011, at which Plaintiff was found guilty for the underlying incident. The DHO's findings were not provided "within 15 days as required to prevent plaintiff from filing an appeal," which Plaintiff claims was a further violation of his due process rights. [#15 at 5]. Mr. Horton received the findings after he completed the six-month sanction that was imposed on him. [*Id.*] Plaintiff filed a grievance, and the Regional Office responded that his due process rights were violated and that a rehearing was

---

[2] This Recommendation quotes Mr. Horton's filings as written, without correction or acknowledgment of error.

necessary. The DHO refused to schedule a second hearing. The Regional Office sent a memorandum to Warden Davis on February 21, 2012, instructing that Plaintiff must be given another DHO hearing because of the due process violation. The rehearing was not conducted. [*Id.*] Mr. Horton was released from the Administrative Segregation Unit to the F-Unit on August 2, 2011. [#15 at 5]. He alleges that Defendant Rangel had him moved from the F-Unit to the E-Unit for filing grievances. [*Id.*]

Plaintiff alleges that Defendants then took action to prevent him from filing documents in court. On October 12, 2011, Plaintiff gave Defendant Foster a handwritten legal brief to be copied for submission to court. Defendant Foster went on leave without copying the documents. [*Id.*] Plaintiff rewrote the brief and asked Defendant Fenlon, Case Manager, to copy it. Defendant Fenlon refused and stated that he does not copy handwritten legal documents. Mr. Horton filed a grievance against Defendant Fenlon for obstructing his access to the court "due to the fact every legal document have to be handwritten by inmates due to the fact inmates are not allowed the use of a typewriter." [*Id.*] Defendant Foster returned from leave on November 2, 2011, and returned the legal brief to Plaintiff "uncopied after stating he would copy it." [*Id.* at 6]. Plaintiff claims this was in retaliation for the grievance he had filed against Mr. Fenlon, and he filed a grievance against Mr. Foster. [*Id.*] Plaintiff asked Warden Davis and Defendant Collins, the Administrative Remedy Coordinator, why he was being refused copies of legal documents for which he was willing to pay. They responded "via Administrative Remedy" that handwritten legal documents will not be copied. [*Id.*] Mr. Horton asserted that they were impeding his access to the court, but Warden Davis and Defendant Collins continued to refuse to assist him in filing his papers. Plaintiff claimed in the First Amended Complaint that even after filing the 12-349 Action on February 9, 2012, Defendants "continued to retaliate and prevent [him] from presenting

4

his legal claims to the court," and that as a result he was unable to pursue "his claim in the District of Columbia or Virginia Court." [*Id.*]

On November 18, 2013, Defendants filed a Motion to Dismiss the First Amended Complaint for failure to state a claim. Defendants argued that a *Bivens* remedy was not available for Plaintiff's stated claims; and even if it were, Plaintiff had not stated a claim for which relief could be granted, Plaintiff did not allege personal participation on behalf of Defendants, and Defendants are entitled to qualified immunity. [#27]. Plaintiff filed a Response to the Motion to Dismiss on December 12, 2013. [#30]. Defendants filed a Reply in support of their Motion on December 26, 2013. [#31].

On April 21, 2014, Judge Boland issued a Recommendation that Defendants' Motion to Dismiss be granted. [#37]. First, Judge Boland determined that Mr. Horton's action was not appropriately one for damages under *Bivens*, but that Mr. Horton could arguably seek declaratory and injunctive relief. [*Id.* at 5-7]. Next, Judge Boland took each of the three claims alleging constitutional violations, dismissing each one for failure to state a cognizable claim. With respect to Mr. Horton's claim for a violation of due process, Judge Boland held that Plaintiff had not alleged any facts from which to infer a protected liberty interest, noting that Plaintiff did not describe the "6-months DHO sanctions" imposed on him, whether he was placed in Administrative Segregation as a result of the DHO hearing, or the conditions of confinement in Administrative Segregation. [*Id.* at 7]. Judge Boland also found that the allegations of retaliation were insufficient, noting that, among other things, Plaintiff did not demonstrate that Defendants Rangel, Foster, and Fenlon had knowledge of his due process grievances. [*Id.* at 8-10]. Finally, Judge Boland determined that Plaintiff had not stated a cognizable First Amendment violation of denial of access to the court, as Mr. Horton failed to allege facts to support an actual injury

5

resulting from Defendants' purported actions. [*Id.* at 10-12].

Plaintiff filed an Objection to the Recommendation on May 7, 2014, acknowledging that he had not described the sanctions or conditions of confinement, had not specified Defendants Rangel, Foster, and Fenlon's knowledge of the administrative grievances, and had not demonstrated that Defendants prevented him from pursuing a nonfrivolous claim. [#38 at 7, 10, 15]. Plaintiff asked therein for leave to amend his Complaint. [*Id.* at 7, 10, 16, 17]. The following day, he filed this Motion for Leave to File a Second Amended Complaint that is now pending before the court. [#39].

***Request for Leave to File Second Amended Complaint.*** Plaintiff adds the following allegations in his Motion for Leave to File a Second Amended Complaint. Mr. Horton avers that he was placed in the Segregation Housing Unit because prison officials found a 5-inch piece of metal while conducting a search of his cell. A UDC was convened with Defendants Rangel and Foster, who refused Plaintiff's request for information regarding the dates of the FBI investigation. Six months later, on June 6, 2011, a DHO conducted a hearing, denied Plaintiff the right to submit documentary evidence, and found him guilty. [#39 at 4]. The conviction resulted in "60 days disciplinary segregation; 180 days loss of commissary; 180 days loss of telephone, T.V. and property." [*Id.*] Plaintiff alleges that the Segregation Housing Unit "consist of about 60% mentally ill inmates at that time banging on the shower and walls all night human feces spreaded on the cell walls and cell changes every 15 days." [*Id.* at 5]. Plaintiff was released from Segregation Housing on August 2, 2011, and he received the DHO findings after the six months of sanctions had past. On January 31, 2012, he filed a grievance alleging a due process violation. "The regional response stated that plaintiffs due process rights were violated rendering the judgment void, and requested plaintiff receive a rehearing Davis and Rangel refused to

schedule a rehearing." [*Id.*] A rehearing was eventually held on October 15, 2013, and "only … due to the fact this court determined on September 17, 2013 there was not reason for dismissal of plaintiffs aforemention Complaint." [*Id.* at 6]. Plaintiff claims this hearing resulted in a void judgment and "any judgment would be void because [he] was entitled to a rehearing in a meaningful time and in a meaningful manner according to due process and BOP regulations." [*Id.*] Plaintiff also alleges that each time he filed an informal complaint as to Foster, Felton, or Rangel, the complaint was shown to the named staff member to solicit his response, thus alerting the person to the grievance. [*Id.*]

Finally, Plaintiff alleges that he filed a lawsuit in the Eastern District of Virginia on January 6, 2010, against the Assistant United States Attorneys ("AUSAs") who successfully prosecuted him for murder and the attorney who represented him in the postconviction proceeding. [*Id.* at 9]. *See also Horton v. West*, No. 10cv154 (TSE/JFA), 2011 WL 124602 (E.D. Va. January 13, 2011). Plaintiff also alleges he filed a companion lawsuit in the District of Columbia.

On May 21, 2014, Defendants filed a Response to Plaintiff's Objection and his Motion for Leave to File a Second Amended Complaint. [#40]. Defendants note that Plaintiff did not address Judge Boland's findings that a *Bivens* remedy is inappropriate and argue that Plaintiff's proposed amendments do not cure the pleading deficiencies.[3]

On June 10, 2014, District Judge Blackburn overruled Plaintiff's objections and adopted the Recommendation on the basis that Plaintiff could not overcome the pleading deficiencies simply by requesting to amend, and granted the Motion to Dismiss. [#42]. In doing so, Judge

---

[3] Defendants also filed a Status Report on February 6, 2014, arguing that Plaintiff's failure to attach a proposed Second Amended Complaint was an additional basis for denial of the pending Motion for Leave to File a Second Amended Complaint.

Blackburn observed that Mr. Horton "had requested leave to amend his pleadings to attempt to correct the deficiencies noted by the magistrate judge, [but] [t]he question whether he can efficaciously do so remains pending." [*Id.* at 3]. The court now takes up this question.

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, Plaintiff may amend his Complaint only if the court finds that justice so requires. Fed. R. Civ. P. 15(a)(2). The court may deny Plaintiff's Motion to Amend if the amendment would be futile, and "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). The district court exercises its discretion in determining whether to grant or deny a motion to amend. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993).

Mr. Horton is entitled to liberal review of his Motion because he is appearing *pro se*. *See Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted).

## ANALYSIS

### A. Violation of Due Process

Mr. Horton's due process claims rest on his allegations that Defendants held the UDC hearing in an untimely manner, withheld information regarding the FBI investigation from him, and failed to provide the DHO report to him in time for appeal of the findings. In Mr. Horton's

8

pending Motion for Leave to File a Second Amended Complaint, he seeks to introduce additional detail, alleging that he spent "60 days [in] disciplinary segregation," and suffered "180 days loss of commissary; 180 days loss of telephone, T.V. and property." [#39 at 4]. He further alleges that the Segregation Housing Unit required mandatory cell changes every fifteen days and consisted predominantly of mentally ill inmates who banged on the shower and walls throughout the night and spread feces on the walls. [*Id.* at 5]. These additional allegations, however, do not transform his previously dismissed claim for a due process violation into one that is cognizable.

The Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V. To state a due process claim, Plaintiff must show: (1) a recognized liberty or property interest has been interfered with by Defendants, and (2) the procedures attendant to that deprivation were not constitutionally sufficient. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460 (1989), *overruled in part on other grounds by Sandin v. Conner,* 515 U.S. 472 (1995). Protected liberty interests may arise from the Due Process Clause itself and the laws of the States. *Hewitt v. Helms,* 459 U.S. 460, 466 (1983), *overruled in part on other grounds by Sandin,* 515 U.S. at 472.

For an incarcerated inmate, "[a] protected liberty interest only arises from a transfer to harsher conditions of confinement when an inmate faces an atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005)) (quotation marks and further citation omitted). A prisoner's due process rights will not generally be implicated by disciplinary actions that do not impose such hardship. *Sandin*, 515 U.S. at 484. The Tenth Circuit has instructed courts to follow a two-fold question in evaluating an inmate's challenge to the conditions of his confinement: "what is the appropriate baseline comparison"; and "how

significant must the conditions of confinement deviate from the baseline to create a liberty interest in additional procedural protections." *Estate of DiMarco v. Wyo. Dept. of Corr.,* 473 F.3d 1334, 1342 (10th Cir. 2007) (assessing whether inmate's administrative segregation violated a liberty interest).

In considering the two-fold question, this court considers a few key factors, such as whether: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement; and (4) the placement is indeterminate."[4] *Id.* Putting aside the first factor because Mr. Horton challenges the legitimacy of his underlying discipline,[5] his additional allegations, taken as true, still do not state a cognizable liberty interest. The 60 days of solitary confinement and the deprivation of television, commissary, and unidentified property alleged by Mr. Horton do not amount to an atypical and significant hardship out of proportion to the ordinary incidents of prison life. *See, e.g., Rodriguez v. General Counsel for Federal Bureau of Prisons*, No. 08-1364, 315 Fed. Appx. 79, 80 (10th Cir. 2009) (holding a sixty-day denial of commissary and telephone privileges was not sufficiently severe to create a liberty interest, and citing analogous cases). Indeed, administrative segregation by itself is neither atypical nor significant. *See Sandin*, 515 U.S. at 480. ("The Due Process Clause standing alone confers no

---

[4] The Tenth Circuit subsequently clarified that the *DiMarco* factors are instructive, not dispositive, and the inquiry should consist of "a fact-driven assessment that accounts for the totality of conditions presented by a given inmate's sentence and confinement." *Rezaq*, 677 F.3d at 1012 n.5.

[5] Mr. Horton cannot state a cognizable due process violation based on the underlying DHO conviction because it has not been overturned. When a prisoner seeks relief for a constitutional violation, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). *See also Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996) (applying *Heck* to *Bivens* actions as well as § 1983 actions). Mr. Horton does not allege that the underlying DHO conviction has overturned.

liberty interest in freedom from state action taken within the sentence imposed") (internal quotation marks and citation omitted). Furthermore, Mr. Horton does not claim his sentence was extended as a result of the sanctions. And to the extent Plaintiff seeks declaratory relief that his 60-day confinement in Administrative Segregation violated a constitutional right, such claim is mooted by his release from that unit on August 2, 2011. [#39 at 6]; *see Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (holding that the plaintiff "must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant.").

Accordingly, even if the court were to allow Mr. Horton to file a Second Amended Complaint, the factual allegations set forth still do not state a claim for due process violation.

**B.   Retaliation**

In his retaliation claim, Mr. Horton avers that Defendants Foster, Fenlon, and Rangel retaliated against him after he filed administrative grievances following the UDC and DHO hearing, and by transferring him from the F-Unit to the E-Unit and refusing to copy his legal briefs. In dismissing the retaliation claim stated in the First Amended Complaint, the court observed, among other deficiencies, that Plaintiff had failed to plead facts to show that Defendants Foster and Fenlon had knowledge of his grievances. Mr. Horton now alleges that Defendants Foster, Fenlon, and Rangel knew of the grievances filed against them because they were required to respond. [#39 at 4]. But this additional allegation does not cure the deficiencies in Plaintiff's retaliation claim.

A retaliation claim requires a plaintiff to show: (1) he was engaged in constitutionally protected activity; (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct. *Nielander*

11

*v. Bd. of Cnty. Comm'rs of Cnty. of Republic,* 582 F.3d 1155, 1165 (10th Cir. 2009). As previously stated by this court, to state a cognizable claim for retaliatory conduct based on filing grievances, an inmate must allege specific facts that support a finding that "but for the retaliatory motive, the incidents to which he refers … would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Mr. Horton's Motion for Leave to File a Second Amended Complaint does not satisfy this standard.

A prisoner's right to file grievances is protected by the Constitution. *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991). But Mr. Horton still has not pled any specific facts to show that Defendants' actions either caused him injury that would chill a person of ordinary firmness from continuing to engage in filing grievances or that Defendants' actions were substantially motivated as a response to his constitutionally protected conduct.

Plaintiff avers that after his release from Administrative Segregation, Defendant Rangel had him transferred from F-Unit to E-Unit in retaliation for his filing a grievance regarding the UDC hearing and that Defendants Rangel and Fenlon refused to copy his legal papers. Yet Mr. Horton still identifies no specific facts that support a claim that either of these alleged acts constitutes an injury of such proportion as to chill him from filing additional grievances. Nor does Mr. Horton allege any specific facts, as opposed to conclusory allegations, to support the conclusion that Defendants' actions (even if they rose to the level of a requisite injury) were motivated by his grievances. Knowledge of the grievances, while necessary, is not sufficient – Plaintiff avers no specific facts that suggest a nexus between his grievances and Defendants' actions. Thus, the additional facts alleged in Mr. Horton's Motion for Leave to File a Second Amended Complaint simply do not change the conclusion that he fails to state a cognizable claim for retaliation.

**C. Access to the Courts**

Finally, Mr. Horton claims that Defendants restricted his access to court in violation of the First Amendment when they refused his requests for copies of legal briefs.

A prisoner's right to access the courts is protected by the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). To state a violation of this right, Plaintiff must demonstrate an actual injury that hindered his efforts to pursue a legal claim. *See, e.g., Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996). The injury requirement is satisfied if Plaintiff is precluded from a "reasonably adequate opportunity to file nonfrivolous legal claims challenging [ ] convictions or conditions of confinement." *Lewis v. Casey*, 518 U.S. 343, 354-56 (1996).

Plaintiff alleges, as a result of Defendants' actions, he was unable to pursue state court claims in Virginia prior to the expiration of the relevant statute of limitations. Though not altogether clear, it appears from Plaintiff's allegations that he wished to pursue the tort claims that were dismissed by the Eastern District of Virginia in *Horton v. West*, a case in which he sought damages and declaratory relief for negligence, legal malpractice, and violation of his constitutional rights.[6] *Horton*, 2011 WL 124602, at *1. The Eastern District of Virginia court

---

[6] The background of Mr. Horton's history in federal court, which was not supplied by Plaintiff, is helpful in understanding his First Amendment claim for denied access to the court. The court may take judicial notice of filings in related cases. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979). In 1993, Plaintiff filed a motion to vacate his murder conviction pursuant to 28 U.S.C. § 2255, alleging *inter alia* prosecutorial misconduct. *See Horton v. United States,* 983 F.Supp. 650 (E.D. Va. 1997). Plaintiff was represented in that proceeding by George F. West, Esquire. *Id.* Plaintiff's application for postconviction relief was denied and his appeal of that denial was dismissed by an unpublished disposition. *See United States v. Horton,* 164 F.3d 626 (4th Cir. 1998), *cert. denied,* 531 U.S. 1201 (2001). Plaintiff subsequently retained James Q. Butler, Esq. to file a civil action for legal malpractice against Mr. West for conspiring with the United States Attorney. Mr. Butler allowed the statute of limitations on Plaintiff's claim against West to expire. In October 2008, Plaintiff filed a complaint against Mr. Butler, asserting claims of negligence and legal malpractice. Mr. Horton obtained a default judgment against Mr. Butler, which was subsequently affirmed. *See Horton v. Butler,* 352 Fed. Appx. 449 (D.C. Cir. Nov. 2, 2009). *See also* [#39 at 8].

13

dismissed *Horton v. West* on multiple grounds, including that his claims were time-barred, and declined to exercise supplemental jurisdiction over the state tort claims, noting, "[n]othing in this dismissal is meant to prejudice plaintiff's ability to seek relief for his tort claims in the appropriate state court, should he wish to do so." *Horton*, 2011 WL 124602, at *4 n. 8. *See also* [#39 at 9].

Virginia applies a three-year statute of limitations to legal malpractice claims and claims of negligence associated with the malpractice. *See* Va. Code Ann. §§ 8.01-246, 54.1-3906. *See also Hewlette v. Hovis*, 318 F. Supp. 2d 332 (E.D. Va. 2004)). Virginia applies a two-year statute of limitations to fraud claims. VA Code Ann. § 8.01-243. The District of Columbia applies a three-year statute of limitations to all of these claims. D.C. Code Ann. § 12-301. The Eastern District of Virginia court determined previously that Plaintiff "possessed sufficient information about the harm done to him" by the AUSAs and Mr. West by the time he hired Mr. Butler in 2007. *Horton*, 2011 WL 124602, at *4. According to Plaintiff's allegations in this action, he did not ask Defendant Foster for copies of his court filings until October 2011. [#39 at 7]. Therefore, even taking the underlying facts as true, Plaintiff's state law claims were time-barred before Defendants purportedly impeded his access to the court in 2011. Accordingly, Mr. Horton fails to state a cognizable claim that Defendants thwarted his efforts to pursue a nonfrivolous claim, and the allegations in his Motion for Leave to File a Second Amended Complaint do not change the analysis.

# CONCLUSION

For the forgoing reasons, I RECOMMEND that Plaintiff's Motion for Leave to File a Second Amended Complaint [#39] be DENIED.[7]

DATED this 17th day of February, 2015.

BY THE COURT:

s/Nina Y. Wang
United States Magistrate Judge

---

[7] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).