## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01089-REB-NYW

WILLIE HORTON,

     Plaintiff,

v.

BLAKE DAVIS, ADX Warden,
MARK COLLINS, ADX Admin. Remedy Coordinator,
P. RANGEL, ADX Unit Manager,
D. FOSTER, ADX Counselor,
A. FENLON, ADX Case Manager,

     Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Nina Y. Wang

     This matter comes before the court on Defendants Foster and Fenlon's Motion to Dismiss Second Amended Complaint ("Motion to Dismiss Second Amended Complaint"). [#56,[1] filed June 16, 2015]. This matter was referred to this Magistrate Judge pursuant to the Order of Reference dated September 17, 2013 [#18], the Order of Reassignment [#45], the memorandum dated June 16, 2015 [#57], and the Order of Reference dated November 16, 2015 [#71].

     In addition, on November 10, 2015, Plaintiff Willie Horton filed a Motion to Take Judicial Notice of Facts and Evidence ("Motion to Take Judicial Notice") [#68], which was referred to this Magistrate Judge by Order dated November 12, 2015.  [#69].  After carefully considering the Motions and related briefing, the entire case file, and applicable case law, I respectfully RECOMMEND that the Motion to Dismiss Second Amended Complaint be GRANTED for the

_____

[1] In this Recommendation, the court uses this convention to denote the docket and page number as assigned by this court's Electronic Court Filing System ("ECF").  The court also refers to docket entries from Mr. Horton's other lawsuits filed with other courts by referring to the case citation and the convention "ECF No."

following reasons.

## BACKGROUND AND PROCEDURAL HISTORY

Mr. Horton, a prisoner incarcerated at the United States Penitentiary, High Security, in Florence, Colorado ("ADX Florence"), originally filed this lawsuit on April 22, 2013 pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), claiming violations of his Fifth Amendment right to due process and First Amendment right to access the courts and against retaliatory conduct arising from Defendants' alleged conduct associated with the filing of a previous lawsuit. [#1]. Due to the changing nature of the operative pleadings in this case, this court undertakes a comprehensive review in an attempt to unravel and discern the precise nature of Mr. Horton's current allegations as set forth in his Second Amended Complaint[2] [#52].

## I.      Mr. Horton's Federal Court History

The court may take judicial notice of filings in related cases. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979). To frame its consideration of the instant Motion to Dismiss Second Amended Complaint, this court reviews Mr. Horton's federal court history. Defendant was convicted of first-degree murder in the stabbing death of another prisoner in the shower of Cellblock Two at the Maximum Security Facility of the Lorton Reformatory ("Lorton murder"). *United States v. Horton*, 716 F. Supp. 927, 928 (E.D. Va. 1989) *aff'd*, 921 F.2d 540 (4th Cir. 1990). In 1993, Plaintiff filed a motion to vacate his Lorton murder conviction pursuant to 28 U.S.C. § 2255, alleging *inter alia* prosecutorial misconduct. *See Horton v. United States,* 983 F. Supp. 650 (E.D. Va. 1997).

---

[2] While denoted as a Second Amended Complaint, as explained in more detail, the operative pleading is Plaintiff's fifth attempt at stating a cognizable claim in this action. [#1. #11, #15, #39, #52].

Plaintiff was represented in that post-conviction proceeding by George F. West, Esq. *Id.* Plaintiff's application for post-conviction relief was denied and his appeal of that denial was dismissed by an unpublished disposition. *See United States v. Horton,* 164 F.3d 626 (4th Cir. 1998), *cert. denied,* 531 U.S. 1201 (2001).

Plaintiff subsequently retained James Q. Butler, Esq. to file a civil action for legal malpractice against Mr. West for conspiring with the United States Attorney in the Lorton murder trial. *See Horton v. West*, No. 1:10cv154(TSE/JFA), 2011 WL 124602, at *1 (E.D. Va. Jan. 13, 2011) *aff'd*, 448 F. App'x 325 (4th Cir. 2011). Mr. Butler allowed the statute of limitations on Plaintiff's claim against Mr. West to expire. *Id.* Mr. Horton first filed a claim against Mr. Butler in *Horton v. Butler*, Civil Action No. 08-cv-00142-UNA, on January 24, 2008, in the United States District Court for the District of Columbia. This first case was dismissed for failing to submit his required trust account information. *Id.* at ECF No. 3. Then, on October 20, 2008, Plaintiff filed a second complaint against Mr. Butler in the United States District Court for the District of Columbia, asserting claims of negligence and legal malpractice. *See Horton*, 2011 WL 124602 at *1; *Horton v. Butler*, Civil Action No. 08-cv-1794-UNA, ECF No. 1. Mr. Horton ultimately obtained a default judgment against Mr. Butler. *Horton v. Butler,* 352 F. App'x. 449 (D.C. Cir. Nov. 2, 2009). *See also* [#39 at 8]; *Horton v. Butler*, Civil Action No. 08-cv-1794-UNA, ECF. Nos. 14, 17.

In 2010, Mr. Horton, proceeding *pro se*, sued Mr. West and the two Assistant United States Attorneys, Gary Jackson and David Barger, who prosecuted him for the Lorton murder. *Horton v. West*, 2011 WL 124602 at *1; *Horton v. West*, No. 10cv154 (TSE/JFA), ECF. No. 1. The Eastern District of Virginia court dismissed *Horton v. West* on multiple grounds. That court

found that Plaintiff's constitutional claims, including his claim for conspiracy brought pursuant to 42 U.S.C. § 1985, were time barred, noting:

> Here, plaintiff alleges that he hired James Butler, Esquire to sue defendant West for legal malpractice and conspiracy with the federal prosecutors. *Compl.* at 3. According to documents available from the electronic docket of Horton's suit against Butler, Butler was retained in April, 2007. Therefore, Plaintiff undeniably "possesse[d] sufficient facts about the harm done to him" by the defendants [Mr. West, Assistant United States Attorney Gary Jackson, and Assistant United States Attorney David Barger] at that time to assert the claims he makes here. Nonetheless, well over two years elapsed until this federal complaint was filed on January 6, 2010. Consequently, plaintiffs instant claims pursuant to § 1983 and *Bivens* are subject to dismissal pursuant to § 1915A as time-barred.

*Horton v. West*, 2011 WL 124602 at *4. Then, the court declined to exercise supplemental jurisdiction over Mr. Horton's state tort claims, noting in a footnote: "Nothing in this dismissal is meant to prejudice plaintiff's ability to seek relief for his tort claims in the appropriate state court, should he wish to do so." *Horton v. West*, 2011 WL 124602 at *4 n.8. *See also* [#52 at 4]. The District Court for the Eastern District of Virginia identified the state law claims as "negligence and legal malpractice."[3] *Id.* at *1.

## II. Colorado Litigation

### A. Original and First Amended Complaints in this Action

In the original Complaint in this action, Mr. Horton sought to incorporate by reference pleadings from an earlier lawsuit, *Horton v. Rangel*, Civil Action No. 12-cv-00349-REB-BNB (D. Colo. Feb. 11, 2013) ("12-349 Action") that was dismissed without prejudice. [#1]. In *Horton v.*

---

[3] There is no indication that Mr. Horton pled or the District Court for the Eastern District of Virginia interpreted Plaintiff's claim for conspiracy as one under state law (as opposed to pursuant to 42 U.S.C. § 1985). In any case, such state claim would be time-barred, given the two-year statute of limitations under state law for conspiracy, as observed by the District Court for the Eastern District of Virginia. *See Horton*, 2011 WL 124602, at *4. ("Virginia Code. § 8.01–243(A) provides for a two-year statute of limitations for personal injury claims.... Even if plaintiff's cursory reference to that provision were sufficient to state a claim for conspiracy, claims brought pursuant to § 1985, like those brought pursuant to § 1983, are subject to the state statute of limitations for personal injury action.").

*Rangel*, Plaintiff alleged that he had "handwritten his legal brief to be submitted to the Superior Court of the District of Columbia, and on October 12, 2011 gave D. Foster my handwritten brief for 4 copies, Mr. Foster went on Leave without copying the documents."[4]  12-349 Action, ECF No. 1 at 6.  Magistrate Judge Boland determined that Plaintiff's Complaint was defective pursuant to D.C.COLO.LCivR 8.2 and ordered him to cure the deficiencies if he wished to pursue his claims.  [#4].  On May 28, 2013, Mr. Horton filed a second Prisoner's Complaint in this case on a court-approved form identifying three claims and stating under each that he "would like to incorporate and adopt by reference paragraphs 1 thru 25, the cause of action section of Complaint and the amendment to that complaint."  [#11 at 8].  On August 14, 2013, Judge Boland ordered him to file an Amended Complaint "that states specifically the claims he is challenging in this action," after noting that the Complaint in the 12-349 Action contained only thirteen paragraphs.  [#14].

On August 28, 2013, Mr. Horton filed an Amended Complaint ("First Amended Complaint") against Blake Davis, in his official capacity as Warden of the "United States Penitentiary in Florence, Colorado;" Mark Collins, in his official capacity as Administrative Remedy Coordinator at ADX Colorado; P. Rangel, in her official capacity as ADX Unit Manager; D. Foster, in his official capacity as an ADX Counselor; and A. Fenlon, in his official capacity as ADX Case Manager.  [#15].  Among other claims, Plaintiff again alleged that Defendants Foster and Fenlon took action to prevent him from filing documents in court.  [*Id.* at 5-6].  Specifically, Plaintiff averred that on October 12, 2011, Plaintiff gave Defendant Foster a handwritten legal brief to be copied for submission to court.  Defendant Foster went on leave without copying the documents.  [*Id.* at 5].  Plaintiff rewrote the brief and asked Defendant Fenlon, Case Manager, to

---

[4] The court, at times, quotes directly from Plaintiff's legal filings without correcting any spelling or grammatical errors, or applying the use of [sic].

copy it.  Defendant Fenlon refused and stated that he does not copy handwritten legal documents.  [*Id.*]   Mr. Horton filed a grievance against Defendant Fenlon for obstructing his access to the court "due to the fact every legal document have to be handwritten by inmates due to the fact inmates are not allowed the use of a typewriter."  [*Id.*]  Defendant Foster returned from leave on November 2, 2011, and returned the legal brief to Plaintiff "uncopied after stating he would copy it."  [*Id.* at 6].  Plaintiff claims this was in retaliation for a grievance he had filed against Mr. Fenlon, and he filed a grievance against Mr. Foster.  [*Id.*]  Plaintiff asked Warden Davis and Mr. Collins, the Administrative Remedy Coordinator, why he was being refused copies of legal documents for which he was willing to pay.  They responded "via Administrative Remedy" that handwritten legal documents will not be copied.  [*Id.*]   Mr. Horton asserted that they were impeding his access to the court, but Warden Davis and Mr. Collins continued to refuse to assist him in filing his papers.  Plaintiff claimed in the First Amended Complaint that even after filing the 12-349 Action on February 9, 2012, Defendants "continued to retaliate and prevent [him] from presenting his legal claims to the court," and that as a result he was unable to pursue "his claim in the District of Columbia or Virginia Court."  [*Id.*]   From his Complaint in the 12-349 Action, Plaintiff expanded his allegation from his inability to pursue a claim in D.C. Superior Court, *see* 12-349 Action, ECF No. 1 at 6, to allegations that he was prevented from pursing claims in both the District of Columbia and Virginia.  Nevertheless, Plaintiff did not articulate what specific claim or claims he was attempting to pursue in either the District of Columbia or in Virginia. [#15].

On November 18, 2013, Defendants filed a Motion to Dismiss the First Amended Complaint for failure to state a claim.  Defendants argued that a *Bivens* remedy was not available for Plaintiff's stated claims; and even if it were, Plaintiff had not stated a claim for which relief

could be granted, Plaintiff did not allege personal participation on behalf of Defendants, and Defendants were entitled to qualified immunity. [#27]. Plaintiff filed a Response to the Motion to Dismiss on December 12, 2013. [#30]. Defendants filed a Reply in support of their Motion on December 26, 2013. [#31].

On April 21, 2014, Judge Boland issued a Recommendation that Defendants' Motion to Dismiss the First Amended Complaint be granted. [#37]. First, Judge Boland determined that Mr. Horton's action was not appropriately one for damages under *Bivens*, but that Mr. Horton could arguably seek declaratory and injunctive relief. [*Id.* at 5-7]. Next, Judge Boland addressed the three claims alleging constitutional violations and dismissed each one for failure to state a cognizable claim. With respect to Mr. Horton's claim for a violation of due process, Judge Boland held that Plaintiff had not alleged any facts from which to infer a protected liberty interest, noting that Plaintiff did not describe the "6-months DHO sanctions" imposed on him, whether he was placed in Administrative Segregation as a result of the DHO hearing, or the conditions of confinement in Administrative Segregation. [*Id.* at 7]. Judge Boland also found that the allegations of retaliation were insufficient, noting that, among other things, Plaintiff did not demonstrate that Defendants Rangel, Foster, and Fenlon had knowledge of his due process grievances. [*Id.* at 8-10]. Finally, Judge Boland determined that Plaintiff had not stated a cognizable First Amendment violation of denial of access to the court, as Mr. Horton failed to allege facts to support an actual injury resulting from Defendants' purported actions. [*Id.* at 10-12].

Plaintiff filed an Objection to the Recommendation on May 7, 2014, acknowledging that he had not described the sanctions or conditions of confinement, had not specified Defendants Rangel, Foster, and Fenlon's knowledge of the administrative grievances, and had not

demonstrated that Defendants prevented him from pursuing a nonfrivolous claim.  [#38 at 7, 10, 15].  Plaintiff asked therein for leave to amend his Complaint.  [*Id.* at 7, 10, 16, 17].   The following day, he filed a Motion for Leave to File a Second Amended Complaint.  [#39].

### B.    Second Amended Complaint

Plaintiff added the following allegations in his Motion for Leave to File a Second Amended Complaint: he filed "Civil Action #1:10-cv-00154-TSE-JEA January 6, 2010 in the Eastern District of Virginia" and he also filed a lawsuit in the District of Columbia.[5]  [#39 at 9].  Mr. Horton argues that he "was impeded by all the aforemention defendants now the statute of limitation has expired.   the aforemention defendants prevented Plaintiff from even filing his claim."  [*Id.*]  It appears that Mr. Horton is referring to the action in the Superior Court for the District of Columbia referenced in his Complaint in the 12-349 Action.  12-349 Action, ECF No. 1 at 6.  In neither the 12-349 Action nor this action does Plaintiff expressly describe the claim he was attempting to assert in the District of Columbia that was the subject of the legal papers that Defendants failed to copy.  *Id.*; [#52; #65].

On May 21, 2014, Defendants filed a Response to Plaintiff's Objection and his Motion for Leave to File a Second Amended Complaint.  [#40].  On June 10, 2014, District Judge Blackburn overruled Plaintiff's objections and adopted Judge Boland's Recommendation on the basis that Plaintiff could not overcome the pleading deficiencies simply by requesting to amend, and granted the Motion to Dismiss Plaintiff's First Amended Complaint.  [#42].  In doing so, Judge Blackburn observed that Mr. Horton "had requested leave to amend his pleadings to attempt to correct the deficiencies noted by the magistrate judge, [but] [t]he question whether he can

---

[5] Plaintiff does not identify the lawsuit he filed in the District of Columbia by name or case number.  Both *Horton v. Butler*, Civil Action No. 08-cv-1794-UNA (D.D.C. Jan. 24, 2008) and *Horton v. Butler*, Civil Action No. 08-cv-1794-UNA (D.D.C. Oct. 20, 2008) were filed in the United States District Court for the District of Columbia.

efficaciously do so remains pending." [*Id.* at 3].

On February 17, 2015, this court issued a Recommendation that Plaintiff's Motion for Leave to File a Second Amended Complaint be denied on the basis that the proposed amendments did not cure the pleading deficiencies as to Plaintiff's claims for due process violation, retaliation, or denial of access to the courts. [#46]. Plaintiff filed an objection to the Recommendation on March 6, 2015. [#47]. Judge Blackburn issued an order adopting the Recommendation on March 24, 2015. [#48].

On April 1, 2015, Plaintiff filed a "Memorandum in Support of Motion to Alter or Amend the Judgment," arguing that the court misapprehended the facts regarding his access to the courts claim and misapplied a Virginia statute of limitations. [#50]. Specifically, Plaintiff asserted that he was not attempting to re-litigate the Eastern District of Virginia action, but to file a new action in state court in Virginia and that a five-year statute of limitations applied to his state law claims. [*Id.* at 4]. The only discussion of a five-year statute of limitations pertained to a statute of limitations related to legal malpractice arising from contract. [#48 at 4 n.4]. On May 11, 2015, the court granted Plaintiff's Motion to Alter or Amend the Judgment, and vacated the March 24, 2015 Order in part "to the extent it adopted the magistrate judge's recommendation that plaintiff's access to courts claim should be dismissed as time-barred." [#51]. The court granted Plaintiff leave to file a Second Amended Complaint to allege "a claim for denial of access to courts as against only the defendants implicated by that claim." *Id.*

On May 26, 2015, Mr. Horton filed the Second Amended Complaint naming A. Fenlon and D. Foster (collectively, "Defendants") and asserting one claim for "denial of access to the court." [#52]. Plaintiff requests punitive, exemplary, and compensatory damages in an unspecified amount and declaratory judgment that "the defendants' acts, policy, and practice

violated Plaintiff's Constitutional rights to access the courts." [*Id.* at 7]. Mr. Horton again alleges that he gave Defendant Foster a handwritten legal brief on October 12, 2011 to be photocopied, and then Defendant Foster departed for leave without copying it. [*Id.* at 4]. Then, Mr. Horton "rewrote" the brief and gave it to Defendant Fenlon to copy, but Defendant Fenlon refused. [*Id.* at 4]. Plaintiff then filed a grievance against Defendant Fenlon. [*Id.*]. Mr. Horton alleges that on November 2, 2011, Defendant Foster returned from leave and returned the legal brief to Plaintiff "uncopied after stating he would copy it." [*Id.* at 5]. Plaintiff subsequently filed a grievance against Defendant Foster. *Id.* Plaintiff asked Warden Davis and Mr. Collins "why he was being refused copies of legal documents that he was willing to pay for." [*Id.*] They responded "via Administrative Remedy" that handwritten legal documents will not be copied. [*Id.*] Mr. Horton asserts that Defendants Foster and Fenlon impeded his access to the court, and that he was consequently "unable to present his nonfrivolous legal claims in the District of Columbia or Virginia State Court," [*id.*], relying on the District Court for the Eastern District of Virginia's footnote "stating nothing in this dismissal is meant to prejudice plaintiffs ability to seek relief for his claims in the appropriate state court." Plaintiff interpreted this ruling as a dismissal without prejudice. 2011 WL 1246602 (E.D. Va January 13, 2011)." [*Id.*].

The operative Second Amended Complaint marks Plaintiff's fifth attempt to state a cognizable claim in this instant action. Despite the fact that Mr. Horton acknowledges that the legal brief he was attempting to file was returned to him [*see* #52], the court does not have the benefit of that brief to determine unequivocally what claims Mr. Horton intended to file, and in which court. The state law claims that Mr. Horton raised in the District Court for the Eastern District of Virginia were legal malpractice and negligence against Mr. West, *see Horton v. West*, 2011 WL 124602 at *4; and these appear to be the claims that Mr. Horton alleges Defendants

10

precluded him from filing in Virginia state court.  This conclusion is reinforced by Plaintiff's arguments in his Memorandum in Support of Motion to Alter or Amend the Judgment [#50], in which he focused on the undersigned's application of a three-year, rather than a five-year, statute of limitations period for the filing of any malpractice and negligence claims associated with Mr. West's representation.  [*Id.* at 4; #65].  The conclusion is further reinforced by Plaintiff's response to the instant Motion to Dismiss Second Amended Complaint where he contends "Plaintiff's non-frivolous claim was concerning a lawsuit first filed in the Eastern District of Virginia on January 6, 2010…Once, Plaintiff completed his state court complaint concerning his non-frivolous claims of legal malpractice issues Plaintiff requested copies and was refused by the aforementioned defendants."  [#60 at 4-5].  Mr. Horton does not describe what claims he intended to file in the Superior Court for the District of Columbia, but based on Plaintiff's Supplemental Pleading to his Second Amended Complaint [#65], Plaintiff's contentions in his Response to the instant Motion to Dismiss Second Amended Complaint [#60 at 4-5], and the documents for which Plaintiff sought the court to take judicial notice [#68], this court liberally construes Plaintiff's Second Amended Complaint as asserting that Mr. Horton intended to file a legal malpractice claim against Mr. Butler in the District of Columbia.  Against this extensive background, the court now turns to Defendants' Motion to Dismiss Second Amended Complaint.

## ANALYSIS

Defendants filed the instant Motion to Dismiss Second Amended Complaint on June 16, 2015.  [#56].  Defendants make two main arguments as to why Plaintiff's Second Amended Complaint [#52, #65] should be dismissed.  First, Defendants contend that Plaintiff has failed to allege a non-frivolous underlying claim because he fails to identify an actual injury.  [#56 at 3-4].  Second, Defendants argue that they are entitled to qualified immunity.  [*Id.* at 5-6].

Plaintiff filed a Response to the Motion to Dismiss Second Amended Complaint on July 20, 2015 [#60].  In his Response, Mr. Horton appears to argue that he has alleged a non-frivolous underlying claim because the District Court for the Eastern District of Virginia "waited a complete year before ruling on the complaint on January 13, 2011, stating 'noting in this dismissal [as untimely] is intended to prejudice Plaintiffs ability to seek relief for his claims in the appropriate state court.'"  [#60 at 4-5].  This court liberally construes Plaintiff's allegation to mean that he suffered an actual injury because he was prevented from filing legal malpractice claims that were non-frivolous in Virginia state and D.C. superior courts.  Plaintiff also contends that Defendants are not entitled to qualified immunity because qualified immunity: (1) only applies to defendants sued in their individual capacities; (2) only applies to monetary relief and he has sought injunctive relief; (3) does not apply because Defendants failed to follow prison policy; and (4) does not apply because they impeded his meaningful access to the courts.  [*Id.* at 5-7].

Defendants filed a Reply on August 4, 2015 [#63].  In their Reply, Defendants point out that Mr. Horton fails to explain what he did with the legal briefs that were returned to him, or why he did not file those briefs.  [*Id.* at 2].  Defendants further contend that Plaintiff never alleges facts to support why a single copy would not have been sufficient for filing, or why duplication of his brief could not have been accomplished by other means   [*Id.* at 3].  Defendants also argue that Plaintiff fails to state a cognizable constitutional right to photocopying, and even if such right existed, it was not clearly established at the time of the alleged violation by Defendants.  [*Id.* at 4].

Plaintiff filed a Motion to Supplement the Second Amended Complaint ("Motion to Supplement") on September 29, 2015, which was unopposed and granted by this court on November 12, 2015.  [#70].  As discussed above, the allegations in Plaintiff's Motion to Supplement relate to the alleged malpractice of Mr. Butler.  On November 10, 2015, Mr. Horton

filed the Motion to Take Judicial Notice, asking the court to take judicial notice of certain correspondence between him and Mr. Butler and a Notice of Decision by the District of Columbia Bar dated March 21, 2011 [#68]. The court grants in part and denies in part the Motion to Take Judicial Notice [#68] in a separate Order filed concurrently with this Recommendation.[6]

## I.    Standard of Review

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an

---

[6] Even if the court had taken judicial notice of the documents for the truth of the matter asserted therein, the substantive outcome of this Recommendation would not change.

entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Because Mr. Horton is appearing *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted).

## II.      Cognizable First Amendment Claim

In *Bivens,* the United States Supreme Court recognized an implied cause of action for money damages against federal officers alleged to have violated the prisoner petitioner's Fourth Amendment rights.  403 U.S. at 397.  Since then, the Supreme Court has found the same remedy available for violations of an individual's rights under the Cruel and Unusual Punishment Clause of the Eighth Amendment and the Due Process Clause of the Fifth Amendment.  *See Carlson v. Green*, 446 U.S. 14 (1980); *Davis v. Passman*, 442 U.S. 228 (1979).  Beyond these types of violations, a *Bivens* remedy should be inferred only if (1) there is no alternative, existing process for protecting a constitutional interest; and (2) if there are no special factors counseling hesitation against a judicially created remedy.  *Robbins v. Wilkie*, 551 U.S. 537, 550 (2007).  Pertinent to the relief sought here, the Supreme Court has specifically declined to extend a *Bivens* remedy to damages claims based on alleged violations of the First Amendment. *See Bush v. Lucas*, 462

U.S. 367, 390 (1983); *see also Reichle v. Howards*, 132 S. Ct. 2088, 2093 n.4 (2012).   Courts in this District have similarly declined to fashion a *Bivens* remedy for such claims.   *See, e.g., Williams v. Klein*, 20 F. Supp. 3d 1171, 1175 (D. Colo. 2014) (explaining the Court has not recognized such *Bivens* claims for damages raised by prison inmates because prisoners may pursue claims for injunctive relief based on an alleged violation of the First Amendment) (citation omitted).   *But see Williams v. Meese,* 926 F.2d 994, 998 (10th Cir. 1991) (reversing dismissal of prisoner's *Bivens* claim for retaliation for the exercise of first amendment rights).

A prisoner's right to access the courts is protected by the First Amendment.   *Bounds v. Smith*, 430 U.S. 817, 828 (1977).   To state a cognizable violation of this right, Plaintiff must aver sufficient facts to demonstrate an actual injury that hindered his efforts to pursue a legal claim.   *See, e.g., Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996).   The injury requirement is satisfied if Plaintiff is precluded from a "reasonably adequate opportunity to file nonfrivolous legal claims challenging [ ] convictions or conditions of confinement." *Lewis v. Casey*, 518 U.S. 343, 354-56 (1996).   "A prisoner's right of access to the court does not include the right of free unlimited access to a photocopying machine, particularly when…there are suitable alternatives." *Harrell v. Keohane*, 621 F.2d 1059, 1061 (10th Cir. 1980).   "Photocopy access is not an independent constitutional right, but exists only where necessary to the prisoner's right to seek legal redress." *Muhammad v. Collins*, 241 F. App'x 498, 499 (10th Cir. 2007) (citing *Carper v. DeLand,* 54 F.3d 613, 616–17 (10th Cir. 1995) ("a state has no affirmative constitutional obligation to assist inmates in general civil matters.")).   Plaintiff must show he had a meaningful need for copies or a resulting harm.   *See id.* (citing *Lewis*, 518 U.S. at 349).

In applying the relevant law to the allegations made by Plaintiff in his Second Amended Complaint as supplemented [#52, #65], this court finds that Mr. Horton has failed to allege

sufficient facts, taken as true, to demonstrate either a meaningful need for the copies or the requisite resulting harm.

### A.       Meaningful Need for Copies[7]

Even assuming that Defendants Fenlon and Foster refused to make photocopies for him, Mr. Horton does not allege that there were no suitable alternatives to photocopying.  [*See* #52, #65].  He does not allege that the Virginia or District of Columbia courts required the filing of multiple copies of a complaint.  [*See id.*]  He does not allege that he could not have copied his legal briefs by hand, once they were returned to him.  [*See id.*]  Indeed, Mr. Horton alleges that he rewrote the draft of the legal brief that he provided to Defendant Fenlon.  [#52 at 4].

### B.       Resulting Harm

Plaintiff avers that the resulting harm was that "he was unable to present his non-frivolous claims in the District of Columbia or Virginia state court."  [#52 at 5].  Plaintiff contends that "[f]iling a complaint after the state statute of limitations would have been futile. The D.C. Bar has already stated that Mr. Butler's conduct was egregious and disbarred Mr. Butler which makes Plaintiff claim of legal malpractice a non-frivolous claim."  [#65 at 3].

---

[7] The court notes but does not determine, as it was not raised by Defendants, that there is some question as to whether the type of claim Mr. Horton asserts he was attempting to file with the Virginia state court and the District of Columbia Superior Court, *i.e.*, legal malpractice and/or negligence, can form the basis of a cognizable injury for First Amendment purposes.  In *Lewis v. Casey*, the Supreme Court observed that "the injury requirement is not satisfied by just any type of frustrated legal claim.  Nearly all of the access-to-courts cases in the *Bounds* line involved attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated, or habeas petitions, we extended this universe of relevant claims only slightly, to 'civil rights actions,' – *i.e.*, actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights. … In other words, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  *Lewis*, 518 U.S. at 355.

Defendants argue there is no actual harm because Plaintiff has failed to allege an actual injury. [#63 at 3]. This court respectfully agrees with Defendants.

### 1.   Virginia

As an initial matter, Mr. Horton conflates his two potential claims by asserting that Mr. Butler's disbarment establishes that his claims in Virginia state court are non-frivolous. He never asserted a claim for malpractice against Mr. Butler in the District Court for the Eastern District of Virginia, and that court never passed on any claim against Mr. Butler. *See Horton*, 2011 WL 124602, at \*1. Rather, those claims were directed at Mr. West, accrued no later than April 2007, *id.* at \*4, and nothing in Plaintiff's various pleadings, including the operative Second Amended Complaint, suggest that those claims were not time-barred by October 12, 2011, when Mr. Horton first requested any photocopies.

In his Motion to Amend or Alter Judgment, Plaintiff asserted that a five-year statute of limitations applied to his state law claims, and thus had Defendants copied his legal briefs as requested at the end of 2011, he could have filed a timely lawsuit in Virginia state court. [#50 at 4]. Virginia applies a five-year statute of limitations to actions arising out of a breach of contract. *See* Va. Code Ann. § 8.01-246(2). Virginia courts generally treat legal malpractice claims and claims of negligence associated with the malpractice as actions on contract. *See, e.g., Hewlette v. Hovis*, 318 F. Supp. 2d 332, 335 (E.D. Va. 2004). However, Virginia differentiates between malpractice actions based on a breach of a written contract, for which there is imposed a five-year statute of limitations, and malpractice actions pursuant to an unwritten contract, express or implied, for which there is imposed a three-year statute of limitations. *Compare* Va. Code Ann. § 8.01-246(2) *with* § 8.01-246(4). The Virginia Supreme Court has held that the three-year statute of limitations applicable to unwritten contracts shall be applied to legal malpractice

Case 1:13-cv-01089-REB-NYW   Document 73   Filed 11/19/15   USDC Colorado   Page 18 of 23

claims and claims of negligence associated with the malpractice where there is no written contract. *See Van Dam v. Gay*, 280 Va. 457, 460 n.1 (Va. 2010) (citing *Oleyar v. Kerr*, 217 Va. 88, 90 (1976)).

A few years after the *Kerr* decision, the Virginia Supreme Court declined to "hold that the contract statute of limitations applies to all actions for legal malpractice, regardless of whether the action is brought ex contractu or ex delicto." *Goodstein v. Weinberg*, 219 Va. 105, 109 (1978) (considering appropriate statute of limitations for negligence torts in a legal malpractice case in which the plaintiff pursued only a claim for negligence). Almost twenty years later, the Virginia Supreme Court held, in considering whether the defense of contributory negligence was available in a legal malpractice action, that "the duty upon the attorney to exercise reasonable care, skill, and diligence on behalf of the client arises out of the relationship of the parties, irrespective of a contract, and the attorney's breach of that duty, i.e., the appropriate standard of care, constitutes negligence." *Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Capital Corp.*, 249 Va. 426, 432 (1995). *See also Hunter v. Massie*, 1995 WL 1056051, at *4 (Va. Cir. Ct. 1995) (applying statute of limitations for claims of personal injury after finding that duty of court-appointed attorney to indigent plaintiff charged with felonies arose from that special relationship, irrespective of contract, to take due care, despite the fact that plaintiff had sued the attorney for professional negligence). If a Virginia court determined that Mr. Horton's claims against Mr. Butler arose more properly in personal injury context, the statute of limitations for such a claim is two years. *See* Va. Code Ann. § 8.01-243(A); *see also Hunter*, 1995 WL 1056051, at *4.

At no time has Mr. Horton alleged, in any of the iterations of the Complaint in this lawsuit, in other related cases, or in the documents reviewed by this court, that he had a written

contract with Mr. West.   Therefore, this court respectfully concludes that Plaintiff fails to aver sufficient facts in his Second Amended Complaint to invoke Virginia's five-year statute of limitations, as opposed to the three-year statute of limitations for legal malpractice claims based on an unwritten contract or a two-year statute of limitations based on a tort theory of negligence.

Even if he could pursue a claim of legal malpractice against Mr. West (or even Mr. Butler) based on a written contract, Plaintiff knew no later than November 2, 2011 that Defendants had refused his request for copies.  [#52 at 5].  If a five-year statute of limitations applied, as Mr. Horton contends, his time for filing a malpractice or negligence claim based on a breach of written contract would not have run until April 2012—months after he was refused the subject photocopies.  [#50 at 4].  As discussed above, Plaintiff fails to aver facts that establish that the lack of photocopies prevented him from submitting the copy or copies of his legal briefs to the Virginia state court no later than November 2, 2011.  He also does not contend (nor could he since it would be contradicted by what he has already pled) that he attempted to file a lawsuit in Virginia state court which was dismissed on statute of limitations grounds.  [#52, #65].  Instead, albeit unclear, Mr. Horton seems to suggest that he interpreted the District Court in the Eastern District of Virginia's opinion to mean he had an additional year from the date of that order to file in state court [#65 at 3 ("Plaintiff interpreted the aforemention ruling as the one year wait as not counting as part of the state statute of limitation")]; and he decided not to file altogether after January 30, 2012, because he independently determined it would be futile.  [*Id.*]

Rather than hand-copy the documents himself and initiate the lawsuit, he waited for a response to the grievance he submitted pursuant to the Federal Bureau of Prisons' administrative remedy process.  [#60 at 2].  Mr. Horton's grievance for a remedy was denied on July 24, 2012. [*Id.*]  Had Mr. Horton not chosen to await the outcome of his grievance, but rather pursue his

state court claim as soon as Defendant Foster returned his brief on November 2, 2011 stating that he would not copy it, he could have filed a claim for legal malpractice based on a written contract with Mr. West (or Mr. Butler) by April 2012.  *See Holt v. Werholtz*, 185 F. App'x 737, 740 (10th Cir. 2006) (dismissing appeal of prisoner plaintiff on access to courts claim who could have employed handwriting as an alternative to photocopying, and furthermore did not show that his injury resulted from defendants' actions).  Based on these set of facts, taken as true, it was Plaintiff's misapprehension of the applicable statute of limitations and assessment of futility that caused him not to file in Virginia state court, not Defendants' refusal to copy his legal briefs.

### 2.      District of Columbia

To the extent Mr. Horton alleges he was precluded from filing a non-frivolous claim against Mr. Butler in the District of Columbia Superior Court, this court similarly finds that the Second Amended Complaint as supplemented fails to allege sufficient facts to establish actual harm that stemmed from Defendants' actions.  First, Mr. Horton had already filed and prevailed on a claim for legal malpractice against Mr. Butler in the United States District Court for the District of Columbia and received a Notice of Decision dated March 21, 2011 that "this claim be paid in the amount of $5,500.00."  *Horton,* 352 F. App'x at 450; [#68 at 9].  Plaintiff fails to allege any facts to establish that a successive claim would have been considered non-frivolous and not barred by the doctrines of claim or issue preclusion.  *See Elwell v. Elwell*, 947 A.2d 1136, 1139-40 (D.C. 2008).  Second, Plaintiff does not aver that the statute of limitations for filing any such action in the District of Columbia Superior Court lapsed between the time he requested copies and either the time that he was informed that copies would not be made, or the time his grievance was resolved.  [#52, #65].  Nor, as discussed above, did Plaintiff attempt to submit either the existing handwritten legal brief, or a hand-copied version of such brief, to the

District of Columbia Superior Court, only to be dismissed on statute of limitations grounds.

Accordingly, this court concludes that Plaintiff has failed to state a cognizable First Amendment violation in his Second Amended Complaint.[8]

## III.   Qualified Immunity

Even assuming that Plaintiff's Second Amended Complaint as supplemented did plead a cognizable First Amendment access to courts violation, Plaintiff has not shown that such right was clearly established law existing in 2011, or even in 2012, such that prison officials would know they were required to copy his legal documents by machine without advising Defendants of a specific need for the copies.  As discussed above, the Tenth Circuit has held that "[p]hotocopy access is not an independent constitutional right, but exists only where necessary to the prisoner's right to seek legal redress." *Muhammad*, 241 F. App'x at 499.  Unlike *Johnson v. Parke*, 642 F.2d 377 (10th Cir. 1981), Plaintiff does not aver that either the Virginia or the District of Columbia courts informed him that he needed copies of any complaint or legal brief, and that he in turn, informed Defendants of those needs.  [*See generally* #52, #65].  Nor does Plaintiff identify a rule or regulation in the Second Amended Complaint as supplemented that required Defendants to photocopy pursuant to any request that was coupled with an offer of payment for the copies.  *Muhammad,* as cited by Plaintiff, does not hold otherwise; instead the Tenth Circuit held that without a show of need for the copies, or a resulting harm, Muhammad's First Amendment access to courts claims were "without merit" and subject to dismissal. *Muhammad*, 241 F. App'x at 499.  Accordingly, I find that Defendants are entitled to qualified

---

[8] In arriving at this conclusion, this court does not reach nor conclude that a prisoner could never state a *Bivens* claim based on a violation of the First Amendment or a prisoner's right to have reasonable access to the courts.  Rather, the court finds based on the specific allegations set forth in Plaintiff's Second Amended Complaint as supplemented [#52, #65], this plaintiff has failed to state a cognizable First Amendment violation.

immunity as to Plaintiff's sole remaining claim regarding denial of access to the courts because even assuming that Plaintiff states a claim for a First Amendment access to courts violation under *Bivens*, the expressly asserted constitutional right was not clearly established as of the time of Defendants' actions in either 2011 or 2012.

## CONCLUSION

For the forgoing reasons, this court respectfully **RECOMMENDS** that:

(1)  Defendants' Motion to Dismiss Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [#56] be **GRANTED**, either for failure to state a cognizable First Amendment access to court claim and/or on the basis of qualified immunity.[9]

---

[9] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED:  November 19, 2015                    BY THE COURT:


                                             s/Nina Y. Wang_____
                                             United States Magistrate Judge